176 N.J. Super. 428 (1980)
423 A.2d 680
FIRST MUTUAL CORP., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
GRAMMERCY & MAINE, INC. ET ALS., DEFENDANTS, AND FIRST NATIONAL FIDELITY CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
N.B.J.T., INC. ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided September 17, 1980.
*431 Paul S. Slotkin for plaintiffs.
Edwin J. Jacobs, Jr., for defendants N.B.J.T., Inc., Grammercy & Maine, Inc., Pacific Properties, Michael Land and Gail M. Land, his wife, Stuart B. Finifter and Lois H. Finifter, his wife (Tort, Jacobs, Gross, Rosenberger & Todd, attorneys).
Kenneth B. Mackler for defendants Marvin A. Roth and Nancy Roth, his wife.
HAINES, J.S.C.
Plaintiff lending institutions, First Mutual Corp. and First National Fidelity Corporation, seek entry of judgments by confession on two promissory notes made by defendant corporations Grammercy & Maine, Inc. and N.B.J.T., Inc., one for $100,000 and the other for $180,000. Both notes are in default. They were to have been paid in six months, with interest at the rate *432 of 30% annually. They were guaranteed by the individual defendants and further secured by first mortgages on the real properties owned by the two corporations, second mortgages on properties of a partnership known as Pacific Properties (composed of three of the individual guarantors), a seventh mortgage on a residence owned by defendants Land and a sixth mortgage on the residence of defendants Finifter. Defendants Michael Land and Stuart B. Finifter are attorneys-at-law practicing as partners in Atlantic City, New Jersey. Defendant Marvin Roth is a medical doctor practicing in that community. The monies were borrowed by them as part of their plan to acquire a number of adjoining properties in Atlantic City as a casino site.
At the time of the settlement on the two loans plaintiffs collected a 10% "loan discount fee" and Central National Fund, a mortgage broker, collected 5% for "consulting services and acquisition of financing." Thus, the net proceeds of the $180,000 loan received by the borrowers were $153,000 and the net proceeds received by them from the $100,000 loan were $85,000. The actual cost of these loans when these fees are added to interest ($27,000 on the first loan and $15,000 on the second) was $54,000 and $30,000, respectively. Consequently, each loan cost the borrowers 30% of the gross proceeds and 35.2% of the net proceeds, which translates to annual rates of 60% and 70.4%.
Plaintiffs move for the entry of judgment by confession. They have been procedurally meticulous in following the requirements of R. 4:45-2, the rule which sets forth the procedure for the confession of judgments. All defendants were notified of the motion and the required documents, and affidavits stating the amount due plaintiffs were presented on the return day. The motion was resisted by all defendants. They claimed to have defenses which would deny plaintiffs the right to enforce the notes. These defenses are that (1) the loans violated the Secondary Mortgage Loan Act, N.J.S.A. 17:11A, and under § 58 of that act are unenforceable; (2) the loans were illegal and unenforceable; (3) usury; (4) the mortgages must be foreclosed, pursuant to N.J.S.A. 2A:50-2, before any action may be brought *433 on the notes for a deficiency, and (5) the confession of judgment provision in the notes is not enforceable by reason of N.J.S.A. 2A:16-9 and R. 4:45-1, both of which prohibit the entry of judgment by confession when the warrant of attorney is included in the body of the note. Plaintiffs deny defendants' right to raise these defenses in response to the motion, arguing that they have an absolute right to the entry of judgment by confession unless there is a showing of fraud, a claim not raised by defendants. It is plaintiffs' position that defenses may be asserted only after judgment is entered, by an application to open the judgment in accordance with R. 4:50. Should the motion be allowed?

A. The Confession of Judgment Rule and its interpretation

R. 4:45-2 provides in full as follows:
No judgment shall be entered on warrant of attorney in any action on a bond or other instrument for the payment of money, except on motion after notice to the defendant served in lieu of summons in accordance with R. 4:4-4 or by registered or certified mail. On the return day of the motion, the attorney at law, confessing judgment pursuant to the warrant, shall produce to the court his warrant therefor, the bond or instrument, and the affidavit of the plaintiff, his attorney or agent, to which is attached a copy of the warrant and instrument, stating the true consideration for the liability stated in the instrument, the amount then justly due the plaintiff, and that the judgment is not confessed with a fraudulent intent or to protect the property of the defendant from his creditors. The court may require additional proof in such form as it directs that the warrant was duly executed, the person liable is living and was notified of the application, and the debt or a part thereof is unsatisfied. The court shall then, if satisfied with the proofs, order entry of a judgment for such amount as it finds to be due.
Plaintiffs read this rule as limiting the court's inquiry to questions of fraud, the due execution of the warrant, the adequacy of notice and the existence of the debt. I am of the opinion that it is not to be read so restrictively.
The interpretation of the rule should be undertaken in its historical setting. The practice of entering judgments by confession without notice, has produced much criticism. The Comment to R. 4:45-2 says in part:
The practice of ex parte entry of judgment by confession has been in disrepute in this State for almost 150 years. See Ledden v. Ehnes, 22 N.J. 501, 509-510 *434 (1965). Its unacceptability as a fundamentally unfair and oppressive mechanism is patent. While the revised rule does not wholly eliminate judgments by confession, it does eliminate their most objectionable feature by requiring notice to be given to the defendant before entry of judgment.
In Alderman ads. Diament, 7 N.J.L. 197 (Sup.Ct. 1824), the court, addressing a judgment entered by confession, said:
... I think that these judgments entered upon bonds and warrants of attorneys should, upon proper application, be very readily and widely opened, for the method in which they are entered is the loosest way of binding a man's property that ever was devised in any civilized country. [at 198]
In Friendly Consumer Discount Co. v. Foell, 39 N.J. Super. 410, 422 (App.Div. 1956), the court said: "Warrants to enter judgment though they are devices of the common law ... are to be regarded strictly; for through a warrant the debtor seeking a loan bargains away a very precious right, his right to a day in court."
The cases which have dealt with confession of judgment problems in this State have always dealt with a fait accompli: the judgment has been entered and the courts have been asked to set it aside. Considerable liberality has been exercised in this direction. In Ehnes v. King, 41 N.J. Super. 429, 432 (App.Div. 1956), the court said: "A judgment by bond and warrant of attorney entered without the institution of suit and an opportunity of making a defense may be reopened at any time for proper cause ... Our courts have always exercised the power on equitable grounds to reopen such judgments." Hickory Grill v. Admiral Trading Corp., 14 N.J. Super. 1 (App.Div. 1951), is to the same effect. No case has been found in this jurisdiction addressing the question of whether the entry of a judgment by confession may be denied when substantive defenses are asserted at the time of the application for judgment. This is understandable, since notice of such application was not required under our rules until the recent amendment of R. 4:45-2.
A cardinal rule with respect to the conduct of lawsuits in New Jersey is that they shall be prosecuted as straightforwardly and efficiently as possible. Formalities in pleadings are not of significance. Needless and circuitous procedures are to *435 be avoided scrupulously. Not only the spirit of our rules, but their express provisions require the elimination of unnecessary procedural steps. Thus. R. 1:1-2 provides that: "The Rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Plaintiffs' argument that judgment by confession should be entered, then challenged, flaunts these requirements. There is no profit to anyone in a procedure which requires the entry of judgment, its opening under rules requiring the liberal exercise of discretion to open, Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd 43 N.J. 508 (1964) ("every reasonable ground for indulgence is tolerated"), and then a plenary hearing. Both fairness and efficiency are served by a procedure which permits the exhaustion of valid defenses before judgment is entered. It is reasonable to conclude, therefore, that, if the judgments requested by plaintiffs to be entered in this matter would be subject to reopening on application of defendants, they should not be entered until defenses have been explored and ruled upon in a plenary hearing.
The language of R. 4:45-2 supports this conclusion. It requires that motions to confess judgment be supported by an affidavit "... stating the true consideration for the liability stated in the instrument, the amount then justly due the plaintiff, and that the judgment is not confessed with a fraudulent intent ..." In addition, it permits the court to require additional proof that "the warrant was duly executed ... and the debt or a part thereof is unsatisfied." Finally, judgment may be entered only if the court is "satisfied with the proofs," in which event it is to be entered only for such amount as is found to be due. The effect of the defenses asserted here is to deny the "true consideration for the liability stated" in plaintiffs' affidavits. Defendants claim that the "true consideration" was not only the money loaned, but also an arrangement to avoid the usury laws and the impact of the Secondary Mortgage Loan Act. They deny that the amount claimed by plaintiffs is "justly due," *436 as stated in the affidavits supplied by plaintiffs, and, while not alleging "fraudulent intent," claim illegality, an analogous defense. It may be argued that arrangements to enter judgment by confession in order to avoid a defense of illegality constitute a fraud upon the court, if not upon the defendants. What do the words "duly executed" mean? Surely they mean executed in accordance with law. Thus, if the warrant was executed in violation of law, it cannot be effective. Further, judgment by confession may be entered only for such amount as the court finds due. Consequently, defenses which affect the amount of the debt must be explored. In this case those defenses include usury, since violation of the usury laws denies the right to collect interest, N.J.S.A. 31:1-3; violations of the Secondary Mortgage Loan Act, which, under N.J.S.A. 17:11A-58, would erase the debt, and the claim that the mortgages must be foreclosed before judgment may be entered on the notes, since the amount due on the latter cannot be determined until after foreclosure sales have been completed. It is also obvious that consideration must be given to the argument that the warrant is not valid because it is contained in the body of the note: in such cases R. 4:45-1 prohibits the entry of judgment by confession.
It follows, therefore, that plaintiffs' motion must be denied if the defenses which defendants wish to raise are of sufficient moment that they would require any judgments entered by confession to be reopened. Our rules, to the extent applicable here, permit the opening of judgments when fraud, misrepresentation and misconduct are present, when the judgment is void and for "any other reason justifying relief from the operation of the judgment ..." R. 4:50-1. The defenses involved in the present litigation are swept within the reach of the rule by the language "misconduct," "the judgment ... is void" and "any other reason justifying relief." In Court Investm. Co. v. Perillo, 48 N.J. 334 (1966), the court, in referring to the section of the rule which permits the vacation of a judgment for "any other reason justifying relief," said:
... No categorization can be made of the situations which warrant the redress under [this section of the rule] ... [T]he very essence of [this section] is *437 its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.
Aside from the rule, courts have long permitted judgments to be opened for many reasons: Knoettner v. Integrity Corp. of N.J., 109 N.J.L. 186 (E.& A. 1932) (equitable grounds); Stearns v. Morris Canal and Banking Co., 24 N.J. Eq. 588 (E.& A. 1874) (fraud, undue influence and illegality); Barrow v. Bispham, 11 N.J.L. 110 (Sup.Ct. 1829) (fraud). 49 C.J.S. Judgments § 323 at 583-584, lists the following grounds: a failure to substantially comply with material requirements of the statute or rule; forgery of defendant's signature; lack of an authorized signature; a void power to confess judgment; attorney appearing to confess judgment is exceeding his authority; material alteration in the judgment note; improper party plaintiff; breach of agreement with defendant, and fraud on creditors.
The defenses sought to be raised must be meritorious and have some substance in fact. This is the rule with respect to the opening of default judgments under R. 4:50, Marder v. Realty Constr. Co., supra; it is a sensible rule to apply here. Further, as in the case of default judgments, denial of the application to enter judgment by confession must rest in the sound discretion of the trial court, exercised in accordance with equitable principles. Court Investm. Co. v. Perillo, supra 48 N.J. at 341. That discretion, in appropriate circumstances, may be exercised to open a judgment entered after a full trial. Hodgson v. Applegate, 31 N.J. 29, 37 (1959). It appears, therefore, that the defenses raised here will require a plenary hearing before judgment by confession may be entered if they would entitle defendants to open that judgment, assuming it were entered. It is necessary, therefore, to examine the defense claims to see whether these criteria are met.

B. The Defenses

(1) Usury

The maximum interest permitted to be charged under our usury laws at the time of the transaction in question was 1% *438 above the Federal Reserve discount rate, N.J. Admin. Code, 3:1-1.2, a figure much lower than the interest charged here. Generally speaking, this limitation upon lending rates does not apply to corporations. Thus, N.J.S.A. 31:1-6 provides that "no corporation shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation." Guarantors of the corporate debt are subject to the same prohibition. Armin Corp. v. Kullman, 127 N.J. Super. 600 (Law Div. 1974). However, if the corporation is merely a shell, designed to shield a loan, actually made to individuals, from the application of the usury laws, the statute does not apply. In re Greenberg, 21 N.J. 213 (1956); Monmouth Capital Corp. v. Holmdel Village Shops, Inc., 92 N.J. Super. 480 (Ch.Div. 1966); Armin Corp. v. Kullman, supra. When usury is proved the lender is denied recovery of any interest on the loan. Ferdon v. Zarriello, 87 N.J. Super. 124 (Law Div. 1965); N.J.S.A. 31:1-3.
In the present case defendants claim that the corporations to which the loans were made were little more than shells. They were designed to hold title to real property and for no other purpose. It is argued that the loans in fact were made to individuals, that the corporations were chosen as nominal borrowers only to avoid the impact of the usury laws and the Secondary Mortgage Loan Act. The parcels of real estate owned and mortgaged by the corporations are said to have substantially less value than the amount loaned, indicating no genuine intention to loan these large sums of money to the corporate borrowers. These claims, supported by these facts, if proved, are substantial and meritorious; they are factual and must be tried.

(2) Secondary Mortgage Loan Act

N.J.S.A. 17:11A-35 defines a "secondary mortgage loan" as

*439 ... a loan made to an individual ... partnership ... or any other group of individuals however organized, except a corporation, which is secure in whole or in part by a lien upon any interest in real property created by a security agreement, including a mortgage, indenture or any other similar other instrument or document, which real property is subject to one or more prior mortgage liens and which is used as a dwelling, including a dual purpose or combination type dwelling which is also used as a business or commercial establishment and has accommodations for not more than four families ...
The loans made by plaintiffs fall within this definition except for the fact, relied upon by plaintiffs, that they were made to corporations. If they are not sheltered by that exception, the loans violate numerous provisions of the Secondary Mortgage Loan Act. For example, § 48 prohibits brokers' or finders' fees; § 50 prohibits prepayment penalties, and § 52 prohibits confession of judgment agreements, all of which are involved here. Defendants claim the protection of the act, making the same arguments they raise in connection with the usury defense, namely, that the corporations were merely cloaks for individual loans and must be disregarded. In the event the loans were part of a deliberate scheme designed to circumvent full compliance with the Secondary Mortgage Loan Act, the note and supporting agreements may not be enforced. Stubbs v. Security Consumer Discount Co., 171 N.J. Super. 67 (App.Div. 1979). The facts set forth in the pleadings and affidavits of the parties are sufficient to make this defense arguable and to require that defendants have their day in court.

(3) Illegality; Unconscionability

An illegal agreement should not be enforced by the courts. Design-4 v. Masen Mountainside Inn, Inc., 148 N.J. Super. 290 (App.Div. 1977). If the transactions before me were designed to avoid the requirements of the Secondary Mortgage Loan Act they may be illegal and entirely unenforceable; if they were designed to avoid the impact of the usury statutes they may be illegal and unenforceable as to the demands for interest. N.J.S.A. 31:1-13. On some occasions courts have refused to enforce an agreed interest rate on the ground that it is penal and unconscionable, even though the borrower was a *440 corporation not entitled to the defense of usury. Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572 (App.Div. 1962) (interest rate of 30.18% before default and 38.76% after default); Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205, 213 (App.Div. 1959) (interest rate of 15.87% before default and 32.87% after default). These defenses should be exposed at a plenary hearing.

(4) The Foreclosure Requirement

N.J.S.A. 2A:50-10, in connection with loans evidenced by notes secured by mortgages, requires that the mortgage be foreclosed before any action for a deficiency is taken on the underlying debt instrument. This requirement did not become effective until May 1, 1980, raising questions as to its application to the within agreement, which was executed before that date. However, it is unnecessary to address that question here. Section 13 of the act provides that the requirement shall not apply when the debt was incurred "for a business or commercial purpose." Here, there can be no question as to the purpose of the loan: it was purely commercial. Consequently, this argument carries no weight in my consideration of the motion.

(5) The Validity of the Warrant to Confess Judgment

It is argued by defendants that the warrant to confess judgment is contained in the body of the debt instrument and therefore violates R. 4:45-1, which denies the right to enter judgment by confession under those circumstances. In the present case the warrant appears on the last page of the promissory note in a separate section, below the signatures affixed to the note. It requires a separate and additional set of signatures for its validity and is clearly an undertaking separate from the promises contained in the note itself. This form of obligation is frequently used in commercial transactions. The warrant is not in the body of the debt instrument, as claimed. The defense offers no possibilities and should not be considered in connection with my decision of the motion.
*441 In conclusion: The defenses relating to usury, illegality and the Secondary Mortgage Loan Act are meritorious, if proved, and the preliminary facts advanced in support of them are substantial. They would entitle defendants to vacate a judgment entered by confession. A favorable exercise of discretion is required, making denial of the motion and submission of the matter to a plenary hearing a necessity.

C. Procedure

R. 4:45 is without procedural guidelines. Nothing is said as to what should follow the denial of a motion for the entry of judgment by confession. Consequently, a creative approach is invited. A formal pretrial conference will be held after the completion of discovery, at which time a customary pretrial order will be made. Additional formal pleadings will not be required. Related proceedings have been commenced by plaintiffs to foreclose four mortgages. These actions and the confession of judgment application are to be consolidated for discovery and trial purposes.